**James L. BUCKLEY et al., Plaintiffs,**

**v.**

**Hon. Francis R. VALEO et al., Defendants.**

**Civ. A. No. 75–0001.**

United States District Court, District of Columbia.

Jan. 24, 1975.

Brice McAdoo Clagett, Washington, D. C., Ralph K. Winter, Jr., New Haven, Conn., Marvin M. Karpatkin, New York City, for plaintiffs.

Carla A. Hills, Asst. Atty. Gen., New York City, David J. Anderson, Dennis G. Linder, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

### CORCORAN, District Judge.

In their complaint the plaintiffs seek declaratory and injunctive relief against certain provisions of the Federal Election Campaign Act of 1971, 2 U.S.C. § 431 et seq. (Supp. II, 1972); the Federal Election Campaign Act Amendments of 1974, Pub.L.No. 93–443, 88 Stat. 1263; and Subtitle H of the Internal Revenue Code of 1954, 26 U.S.C. § 9001 et seq. (Supp. III, 1973), as amended, Pub.L. No. 93–443, 88 Stat. 1263, and against their enforcement by the defendants. The grounds of the complaint are that the statutes deprive them of the right to petition for redress of grievances, deprive them of the right of privacy, deprive them of due process of law and discriminate invidiously against them, all in violation of the First, Fourth, Fifth and Ninth Amendments to the Constitution. Further alleged grounds are that the mode of appointment and confirmation of members of the Federal Election Commission and its purported power to administer, interpret, make rules and enforce said statutes is in violation of the constitutional separation of powers. The charges are detailed in paragraphs 52 through 84 of the complaint.

This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 2201, 2202, and § 315(a) of the Federal Election Campaign Act of 1971, 88 Stat. 1285, 2 U.S.C. § 437h [hereinafter cited as § 315(a)].

Since they seek an injunction restraining the enforcement of an act of Congress, plaintiffs also seek to convene a three-judge district court, pursuant to 28 U.S.C. §§ 2282, 2284. The defendants have opposed that motion. Further, pursuant to § 315(a), plaintiffs request this Court to certify immediately all questions of constitutionality raised by the complaint to the United States Court of Appeals for the District of Columbia Circuit.[1]

The plaintiffs are four individuals (two of whom are Members of Congress, and one former Senator) and five organizations. The defendants are the Secretary of the United States Senate, the Clerk of the House of Representatives, the Comptroller General, the Attorney General and the Federal Election Commission.[2]

## I

The Federal Election Campaign Act of 1971 as amended by the 1974 Amendments covers very comprehensively all aspects of the financing and conduct of future Federal elections, and the complaint is correspondingly broad, in that it attacks most of the key provisions of the Act on various constitutional theories. But, at this particular juncture, we focus only upon the meaning and effect of § 315(a).[3]

---

1. Plaintiffs also seek to have the defendants' time in which to respond to the complaint reduced from 60 days to 30 days. Fed.R. Civ.P. 12(a). In view of the fact that the defendants have moved to dismiss, plaintiffs' request is now moot.

2. The 1974 Amendments to the Federal Election Campaign Act provide that the Act shall be administered by a "Federal Election Commission." § 310(a). Until the Commission is qualified, the Comptroller General, the Secretary of Senate, the Clerk of the House

of Representatives "shall continue to carry out their responsibilities under title I and title III of the Federal Election Campaign Act of 1971." Federal Election Campaign Act Amendment of 1974, § 208(b), 88 Stat. 1263. The Commission has not yet been established.

3. Section 315(a) provides:
   "Sec. 315(a) The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States may institute such actions

Section 315 establishes a unique procedure for judicial review of actions arising under the Act which raise constitutional issues. It authorizes the Federal Election Commission, the national committee of a political party, or any individual eligible to vote in any election for the office of President to bring an appropriate action in a district court to test the constitutionality of any provision of the Federal Election Campaign Act of 1971, as amended, or of Sections 608, 610, 611, 613, 614, 615, 616, or 617, of Title 18, United States Code.

The District Court in which a complaint is lodged is required to certify "immediately" all constitutional questions to the Court of Appeals for its Circuit, which, in turn, is required to hear and determine those questions sitting *en banc*.

The judgment of the Court of Appeals on the constitutional questions, in turn, is reviewable by direct *appeal* to the Supreme Court, and any such appeal must be brought within 20 days of the decision of the Court of Appeals. Finally, both the Supreme Court and the Court of Appeals are required to expedite any matter certified by the District Court.

These unusual review provisions pose several rather obvious questions for the District Court, *in limine, viz.*:

(1) Should the District Court make an initial determination as to constitutionality?

(2) If so, must a three-judge court be convened for that purpose?

(3) Should the District Court explore such preliminary matters as to the standing of each of the parties to bring a complaint?

in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act or of sections 608, 610, 611, 613, 614, 615, 616, or 617 of title 18, United States Code. The district court immediately shall certify all questions of constitutionality of this Act or of sections 608, 610, 611, 613, 614, 615, 616, or 617 of

As this Court construes § 315(a) and the legislative history of Pub.L. No. 93–443, the answer to each of the foregoing questions is in the negative.

The very essence of § 315, as the Court reads it, is speedy judicial review. The District Court is mandated "immediately" to certify questions of constitutionality to the Court of Appeals, § 315(a); the Court of Appeals is mandated to hear the case *en banc*, thus bypassing the normal panel determination, § 315(a); and the decision of the Court of Appeals, *en banc*, is reviewable by a direct appeal to the Supreme Court to be brought no later than 20 days after the decision of the Court of Appeals, § 315(b). It is to be further noted that it is the statutory duty of the Court of Appeals and of the Supreme Court to advance the case on their respective dockets and expedite the case "to the greatest possible extent." § 315(c). Such a mandated procedure would not seem to permit any activity on the part of the District Court which would involve the usual delay pending answer, briefing, argument and consideration, provided only that a substantial constitutional question is raised by a complaint and that complaint is filed by a party having standing to lodge it.

The legislative history, although somewhat sparse, would seem to bear out these conclusions.

## II

The 1974 Amendments to the Federal Election Campaign Act of 1971 became law October 15, 1974. Pub.L. No. 93–443. It emerged from S. 3044 and its House counterpart, H.R. 16090.[4]

title 18, United States Code to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc."

4. As a "clean" bill, S. 3044 had no hearings held on it. The same applies to its House counterpart, H.R. 16090. In the previous session of the Ninety-third Congress, however, there were numerous measures intro-

The original S. 3044 was introduced in the Senate February 21, 1974. It did not include provisions for special review of constitutional issues as is now provided by § 315(a).

The history of the present § 315 is as follows:

(1) On April 10, 1974 Senator Buckley of New York (a plaintiff herein) introduced without objection an amendment to S. 3044, which read as follows:

### EXPEDITIOUS REVIEW OF CONSTITUTIONAL QUESTIONS

. . . . . .

### JUDICIAL REVIEW

"Sec. 407. (a) The Federal Election Commission, the national committee of any political party, and individuals eligible to vote for President are authorized to institute such actions, including actions for declaratory judgment or injunctive relief, as may be appropriate to implement or construe any provision of this Act or of Chapter 29 of title 18, United States Code. The district court shall immediately certify all questions of constitutionality of this Act to the United States court of appeals for that circuit, which shall hear the matter sitting en banc.

"(b) Notwithstanding any other provision of law or rule any decision on a matter certified under subsection (a) shall be reviewable by appeal directly to the Supreme Court of the United States. Such appeal must be brought within 20 days of the court of appeals decision.

"(c) It shall be the duty of the court of appeals and of the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any question certified under subsection (a)."

The amendment was accepted without vote. *Id.* At the time Senator Buckley submitted his amendment he remarked:

. . . (The amendment) merely provides for the expeditious review of the constitutional questions I have raised. I am sure we will all agree that if, in fact, there is a serious question as to the constitutionality of this legislation, *it is in the interest of everyone to have the question determined by the Supreme Court at the earliest possible time. Id.* (Emphasis added.) 120 Cong.Rec. S. 5707 (daily ed. April 10, 1974).[5]

(2) S. 3044, as thus amended, was referred to the House Administration Committee on April 22, 1974.

---

duced in both the Senate and the House concerning various aspects of public financing of Federal elections. A number of those measures were accompanied by hearings. For example, in the Senate, *see* Hearings on S. 1103, S. 1954 & S. 2417 Before the Subcomm. on Privileges and Elections of the Senate Comm. on Rules and Administration, 93d Cong., 1st Sess. (1973); Hearings on S. 23, S. 343, S. 372, S. 1094, S. 1189, S. 1303, S. 1355 & S.J.Res. 110 Before the Subcomm. on Privileges and Elections of the Senate Comm. on Rules and Administration, 93d Cong., 1st Sess. (1973). In the House, *see* Hearings on H.R. 7612 & S. 372 Before the Subcomm. on Elections of the House Comm. on House Administration, 93 Cong., 1st Sess. (1973) (2 vols.). In none of those bills was there a judicial review procedure precisely the same as § 315(a). It should be noted, however, that § 2(a) of S. 2417, to add a § 514(b) in a new Title V of the Fed-

eral Election Campaign Act of 1971, has similar language to that of § 315 but without the "immediate certification" provision of § 315(a). *See* Hearings on S. 1103, S. 1954 & S. 2417 Before the Subcomm. on Privileges and Elections of the Senate Comm. on Rules and Administration, 93d Cong., 1st Sess. 495 (1973).

5. *See also* the remarks of Representative Frenzel, one of the House minority conference managers of S. 3044, during the floor debate in the House concerning S. 3044 who stated: "(A)ny individual under this bill has a direct method to raise these (constitutional) questions and to have those considered *as quickly as possible by the Supreme Court.*" 120 Cong.Rec. H10336 (daily ed. Oct. 10, 1974). (Emphasis added). He also said that, in his view, "there are at least 100 items questionable from a constitutional standpoint in (S. 3044)." *Id.*

(3) On July 24, 1974, the House version designated as H.R. 16090 was introduced in the House with the Buckley amendment included and was eventually reported out of committee with the amendment still included.

(4) On October 7, 1974, the Conference Report was filed with both the House and Senate. It was accepted by the Senate on October 8, 1974 and by the House October 10, 1974.

(5) Significantly, in conference, the authorization in the Buckley amendment "to institute such actions in the appropriate District Court including actions for declaratory judgment or injunctive relief as may be appropriate to implement or construe any provision of this Act," was changed to authorize actions "to construe the constitutionality of any provision of this Act or of Sections 608, 610, 611, 613, 614, 615, 616, or 617 of Title 18 U.S.C." The power "to implement" the Act is deleted.

Where the change originated is not clear. It is not reported in hearings or debates. The comment in the Conference Report simply says:

> The conference substitute generally follows the House amendment and makes it clear that these special judicial review provisions are available only for actions directed at determining the constitutionality of provisions of the Act and of provisions of title 18, United States Code, related to the activities regulated by the Act. S. Conf.Rep. No. 1237, 93d Cong., 2d Sess. 96 (1974).

### III

We would look, as well, to other provisions of the Federal Election Campaign Act of 1971 and Subtitle H of the Internal Revenue Code of 1954 having some bearing on District Court activities in given situations.

A. § 314 of the 1971 Act sets out the enforcement powers of the Federal Election Commission and includes, *inter alia,* authorization for the Commission to institute suit in a District Court to implement its findings by injunctive or other appropriate relief. In such a case the action of the District Court is reviewable in the usual way by the Court of Appeals and then by way of *certiorari* to the Supreme Court. Of course, in such a case the Commission would be the plaintiff exercising its enforcement powers, while the present case represents a challenge by outside parties to the constitutionality of certain provisions of the Act. Presumably, a challenge to Commission procedures instituted under § 314 on constitutional grounds would invoke the application of § 315(a).

B. Section 9011(b)(1) and (2) of Title 26, U.S.C., to some extent would seem to cloud the meaning and effect of § 315(a).

Chapter 95 of Subtitle H was enacted to implement the so-called "dollar check-off." As originally enacted, it was not a part of the Federal Election Campaign Act of 1971. However, in 1974 the amendments to the 1971 Act and to Subtitle H were embraced within the same general framework, thus bringing them under the same umbrella, presumably to be construed compatibly.

Section 9011(b)(1) of Title 26, U.S. C., like § 315(a), authorizes the Federal Election Commission, the national committee of any political party, and any individual eligible to vote in any election for the office of President "to institute such actions, including actions for declaratory judgment or injunctive relief as may be appropriate to implement or construe any provision of . . . chapter (95)." [6] However, § 9011(b) (2), unlike § 315(a), expressly provides that any such suits are to be heard and

---

**6.** Chapter 95 of Subtitle H of the Internal Revenue Code of 1954, 26 U.S.C. § 9001 et seq. (Supp. III, 1973), is the Presidential Election Campaign Fund Act, the so-called dollar check-off.

Pub.L.No. 93-443, the 1974 Amendments, also added a new Chapter 96 of Subtitle H, the Presidential Primary Matching Payment

Account Act. 88 Stat. 1297, 26 U.S.C. § 9031 et seq.

The 1974 Amendments substituted "Federal Election Commission" for "Comptroller General" in 26 U.S.C. § 9011(b). *See* § 404(c)(21) of the Federal Election Campaign Act Amendments of 1974, 88 Stat. 1293.

determined by a court of three judges in accordance with the provisions of § 2284 of Title 28, U.S.C.

Thus, although the Federal Election Campaign Act of 1971, the Federal Election Campaign Act Amendments of 1974, and Subtitle H of the Internal Revenue Code of 1954, are laws *pari materia* and form a cohesive all-embrasive framework as far as Federal elections are concerned, there is, nevertheless, inconsistency between the judicial review called for under § 315(a) and that required by § 9011(b)(2).

■■ Giving effect to the rule that all provisions of an act must be construed to give effect to its ultimate purpose,[7] the two provisions must be reconciled, unless we are to hold that a complaint, such as that at bar, challenging both the Subtitle H provisions, and the other provisions of the Act, is somehow to be bifurcated to give the two different parts of the 1974 Amendments different procedural treatment. We arrive at that reconciliation by concluding that Congress, in its most recent pronouncement, namely § 315(a), directed that the constitutionality of *"any"* provision of this Act"[8] is to be processed as provided in § 315(a) and that to the extent that § 315(a) is, or appears to be, inconsistent with the earlier enacted Chapter 95 of Subtitle H, § 315(a) is to control.

Notwithstanding any apparent inconsistencies or conflicts noted above, this Court is convinced that the overriding concern of Congress was to provide swift judicial review of *all* constitutional questions engendered by the passage of the 1974 Amendments, and to have all those questions, when properly framed in a single complaint, decided together rather than in a piecemeal fashion. Surely Congress could not have intended the unworkable result that would follow were this Court to convene a three-judge district court to decide plaintiffs' Chapter 95, Subtitle H claims, while the remainder of their claims proceeded directly to the Court of Appeals under § 315(a).[9]

## IV

■ The foregoing dictates the conclusions that Congress contemplated that any constitutional challenge to any provision of the Act would be processed through the lower courts to the Supreme Court with a minimum delay, and that to obviate as much delay as possible,[10] the only function of the District Court would be to screen the complaint for determination of whether a constitutional issue was raised and whether it was raised by persons having the statutory authority to do so.[11] The Court accordingly will certify the entire proceeding to the Court of Appeals forthwith.

7. 2A C. Sands, Sutherland Statutory Construction § 46.05, at 56–57 (4th ed. 1973).

8. Emphasis added. "This Act" is, of course, the Federal Election Campaign Act of 1971, as amended by the Federal Election Campaign Act Amendments of 1974. Section 315(a), as noted *supra*, was added by § 208(a) of the 1974 Amendments as a new section of Title III of the 1971 Act.

9. Cf. United States v. Walton, No. 74–1790 (D.C.Cir. Jan. 23, 1975) Slip.Op. at 8:
    We note in conclusion that many rules of statutory construction place the courts in an unco-operative position with regard to legislative intent. Judicial protection of significant statutory and constitutional interests at times require courts to demand a "clear statement" of intent before defer-

ring to a legislative judgment. There always comes a point, however, where the legislative intent is as clear as is humanely possible and at that point the courts must defer or exercise their constitutional responsibilities.

10. On this question of urgency and the problems attendant to any delay in resolving the constitutional questions, *see* Washington Post, Jan. 18, 1975, at A4, col. 1; Washington Star-News, Jan. 19, 1975, at E3, col. 1.

11. ". . . Congress has the undoubted power to give, withhold, and restrict the jurisdiction of the courts other than the Supreme Court . . . ." Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir.), cert. den., 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948) (citation omitted).

Further, the Court concludes that a three-judge district court is not required in the present case. The plain statutory language indicates the unequivocal intent of Congress to establish an *ad hoc* procedure for judicial review of the statutes in question. The procedure established by § 315(a) is clearly inconsistent with that found in 28 U.S.C. §§ 2282 and 2284. Under § 2284 the three-judge district court hears and determines the questions presented on the merits. From its judgment there is a direct appeal to the Supreme Court. 28 U.S.C. § 1253. That procedure, itself an exception to the usual Supreme Court review, has obviously been supplanted by § 315(a).[12]

## V

In light of the above, the Court holds (1) that § 315(a) mandates that this Court must certify immediately to the Court of Appeals all well-pleaded constitutional questions, without in the first instance making a determination as to such constitutionality, and (2) that a three-judge district court is not required to be convened for this case.[13]

The Court specifically finds that the plaintiffs raise substantial constitutional questions, and that at least the four individual plaintiffs have standing to seek judicial review of the provisions in question.[14]

Further, the Court declines to rule on the defendants' motion to dismiss. As on the question of organizational standing, the matters raised in the motion to dismiss are more properly left to the initial determination of the Court of Appeals.

## VI

Accordingly, it is this 24th day of January, 1975,

Ordered and adjudged that plaintiffs' application for a three-judge district court be, and the same is hereby, denied; and it is further

Ordered and adjudged that the constitutional questions raised by plaintiffs in their complaint be, and the same are hereby, certified immediately to the United States Court of Appeals for the District of Columbia Circuit; and it is further

Ordered and adjudged that the Clerk of this Court shall, as soon as practicable, transmit the entire file of the instant case to the Clerk of the Court of Appeals for this Circuit.

12. It would be anomalous indeed to convene a three-judge district court in this case, where at least one member of the court would have to be a Circuit Judge, and then to certify the case to the Court of Appeals, at which point the Circuit Judge who sat on the three-judge district court would seemingly have to recuse himself, thus obviating the congressional design that the case be heard by the Court of Appeals *en banc.*

13. This case, then, is distinguishable from American Civil Liberties Union v. Jennings, 366 F.Supp. 1041 (D.D.C.1973), *prob. juris. noted sub nom.* Staats v. American Civil Liberties Union, 417 U.S. 944, 94 S.Ct. 3066, 41 L.Ed.2d 664 (1974), a three-judge district court, which held unconstitutional § 104(b) of the Federal Election Campaign Act of 1971, 47 U.S.C. § 803(b) (Supp. III, 1973).

In that regard, the Court notes that § 205(b) of the Federal Election Campaign Act Amendments of 1974 repealed Title I of the Federal Election Campaign Act of 1971, 47 U.S.C. § 801 et seq. (Supp. III, 1973).

14. It is not so clear, however, that each of the five organizational plaintiffs possesses the same requisite standing. This is so because obviously none is eligible to vote for the office of President in any election. It is unclear, in the present procedural posture of plaintiffs' case, whether any of the named organizational plaintiffs may be "the national committee of any political party" within the meaning of the relevant statute. Since at least some of the plaintiffs have the requisite standing, and since the ultimate decision as to the standing of others may have to await further exploration, in the interests of time, this Court defers to the Court of Appeals on that issue.