UNITED STATES of America, Plaintiff,

v.

INSTRUMENTS, S.A., INC., and Fisons Instruments/VG Instruments, Defendants,

Comptroller General of the United States, Intervenor–Defendant.

Civ. A. No. 91–1574–LFO.

United States District Court, District of Columbia.

Nov. 13, 1992.

Carter G. Phillips, Rex E. Lee, Michael A. Nemeroff, Peter D. Keisler, Richard D. Klingler, Paul E. Kalb, David L. Lawson, Sidley & Austin, Joan M. Hollenbach, Associate Gen. Counsel, Elizabeth S. Woodruff, Paul G. Thompson, U.S. General Accounting Office, Office of the Gen. Counsel, Washington, DC, for intervenor-defendant.

Michael R. Gottfried, Chester A. Janiak, David P. Shouvlin, Walter M. Foster, Andrew P. Botti, Burns & Levinson, Boston, MA, for Fisons Instruments/VG Instruments.

David O. Bickart, Christopher R. Brewster, Kaye, Scholer, Fierman, Hays & Handler, Washington, DC, for Instruments S.A., Inc.

Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Michael F. Hertz, Joan E. Hartman, Elizabeth A. Cavendish, Attys. Commercial Litigation Branch Civil Div. Dept. of Justice, Washington, DC, for plaintiff.

## MEMORANDUM

OBERDORFER, District Judge.

This action is a constitutional challenge to a portion of the protest provisions of the Competition in Contracting Act of 1984 (CICA), 31 U.S.C. §§ 3551–3556. The plaintiff is the United States, represented by the Department of Justice. The defendants are two disappointed bidders on contracts with the Department of Commerce. The Comptroller General of the United States has intervened as a party defendant. *See* Order of January 10, 1992. The provision at issue is 31 U.S.C. § 3554(c). It provides for the payment of certain bid protest costs when the Comptroller General, an agent of Congress, determines that a disappointed bidder is entitled to such costs. Plaintiff claims that this provision violates separation of powers embodied in the Constitution because the payments would be effected by Executive Branch agencies.

Defendants Instruments, S.A., Inc. (Instruments) and Fisons Instruments/VG Instruments (Fisons) have moved to dismiss for lack of jurisdiction; plaintiff has filed a motion for summary judgment; and Instruments, Fisons and the Comptroller General have filed cross-motions for summary judgment. For the reasons that follow, the action will be dismissed.

### I.

In enacting CICA, Congress intended to promote competition in the government's procurement of goods and services. *Ameron, Inc. v. United States Army Corps of Engineers,* 787 F.2d 875, 879 (3d Cir.1986), *cert. dismissed,* 488 U.S. 918, 109 S.Ct. 297, 102 L.Ed.2d 264 (1988). Among other things, CICA established a "Procurement Protest System," which allows disappointed bidders to file protests with the Comptroller General. A procurement is stayed while the Comptroller General con-

siders the protest, unless the agency finds that urgent and compelling circumstances require that it go forward immediately. 31 U.S.C. § 3553(c). If the Comptroller General determines that the agency has failed to comply with applicable law, he "recommend[s]" that the agency take certain action, such as resoliciting bids and/or terminating the contract. 31 U.S.C. § 3554(b)(1). In addition, if the Comptroller General determines that the agency's procurement failed to comply with applicable law, he:

> may declare an appropriate interested party to be entitled to the costs of—
>> (A) filing and pursuing the protest, including reasonable attorneys' fees; and
>> (B) bid and proposal preparation.

31 U.S.C. § 3554(c)(1). The statute goes on to provide that such protest cost awards "shall be paid promptly by the Federal agency concerned out of funds available to or for the use of the Federal agency for the procurement of property and services." 31 U.S.C. § 3554(c)(2). It is this protest cost award provision that is challenged here.

In March 1989, the Department of Commerce requested bid proposals for a chemical beam epitaxy system. Defendants Instruments and Fisons submitted bids, were denied the contract and filed protests with the Comptroller General. In 1990, the Comptroller General declared both companies entitled to protest costs under § 3554(c)(1). Fisons submitted a claim to the Department of Commerce for $21,-615.28, and Instruments submitted a claim for $54,622.89. The agency has not paid those claims, nor has it formally denied them.

Plaintiff, relying on such cases as *Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc.,* —— U.S. ——, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991), *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), and *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), argues that § 3554(c) violates the constitutional doctrine of separation of powers because of the authority it purports to grant the Comptroller General to require agen-cies to pay protest costs. Plaintiff contends that the actions of the Comptroller General, an agent of Congress, under the provision have the characteristics of Executive Branch actions and that the provision thus aggrandizes Congress's power at the expense of the other Branches of the Federal Government. Moreover, plaintiff argues, insofar as the Comptroller General is acting in his capacity as a Legislative Branch official, his actions fail to comply with the Constitution's requirements of bicameralism and presentment. Plaintiff requests a declaration that § 3554(c) violates the Constitution and that the Department of Commerce is under no legal duty to make payment on defendants' claims.

In moving to dismiss on jurisdictional grounds, defendants Instruments and Fisons argue that this action presents no case or controversy and that a decision on the merits of the constitutional question would constitute an advisory opinion. In particular, defendants observe that a regulation—in effect since 1985 and final since 1989—independently binds Executive agencies to award protest costs when the Comptroller General declares a disappointed bidder entitled to such costs. That regulation, using language similar to § 3554(c), provides:

> *Award of protest costs.* (1) GAO may declare an appropriate interested party to be entitled to the costs of
>> (i) Filing and pursuing the protest, including reasonable attorneys' fees; and
>> (ii) Bid and proposal preparation.
> (2) Costs awarded under subparagraph (1) of this section shall be paid promptly by the agency out of funds available to or for the use of the agency for the acquisition of supplies or services.

50 Fed.Reg. 25,680, 25,681, *codified at* 48 C.F.R. § 33.104(g) (1985) (the "1985 regulation"). Since the Executive has obligated itself to abide by the Comptroller General's determinations, the defendants maintain, the present dispute presents no impermissible encroachment on the Executive's authority by the Legislative Branch. The Comptroller General, while joining in the

defendants' argument, frames the issue in terms of plaintiff's standing to challenge the constitutionality of § 3554(c). In addition, the Comptroller General argues that prudential considerations call for a denial of declaratory relief.

Plaintiff responds by arguing that the 1985 regulation does not independently bind the Executive because it is merely an "implementing" regulation which restates § 3554(c). In addition, plaintiff contends that the 1985 regulation has no effect in this case because it has been amended. Effective August 5, 1991, the applicable regulation states that protest costs *"may* be paid by the agency...." 48 C.F.R. § 33.104(h) (1991) (emphasis added) (the "1991 regulation"). Although the 1991 regulation went into effect after the defendants pursued their protests (and, in fact, after this lawsuit was initiated), the regulation itself purports to apply retroactively to "all recommended awards of protest costs ... which have not yet been paid." *Id.*

## II.

■ Initially there is a question as to whether this district court is the proper forum for entertaining the present action. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, is procedural only: it added a remedy to those available in the federal courts but did not extend the courts' jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). When a complaint seeks declaratory relief, therefore, there must be a basis for federal jurisdiction independent of the Declaratory Judgment Act itself. Of course, the general requirement of a federal question appears to be met here, since the complaint challenges a federal statute under the Federal Constitution. But the plaintiff must also raise a federal *claim,* for the Declaratory Judgment Act does not create a cause of action. *Skelly Oil,* 339 U.S. at 672, 70 S.Ct. at 879. Plaintiff does not seek damages for some unlawful past conduct or an injunction against an ongoing or imminent practice. In effect, it seeks a declaration

of nonliability for its nonpayment of protest costs to the defendants.

In determining the proper forum, it is appropriate to consider where and whether the claim which is the target of plaintiff's preemptive and anticipatory complaint would lie. The mirror image of plaintiff's requested declaratory relief would be an action by the defendants—disappointed bidders—against the United States for payment of protest costs in excess of $10,000. Such an action, which has not been brought by the defendants, would lie not in this Court but in the Claims Court, because the Tucker Act, 28 U.S.C. § 1491, vests exclusive jurisdiction over such claims in the latter forum. *See United States v. Hohri,* 482 U.S. 64, 66 n. 1, 107 S.Ct. 2246, 2249 n. 1, 96 L.Ed.2d 51 (1987). Moreover, even that Court may not be in any position to resolve the anticipated dispute because the agency has not formally acted on the claims. Nor is it clear whether the Claims Court would entertain an action on the claims on the theory that the long delay in agency action is tantamount to denial. *See Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 76 (D.C.Cir. 1984). In fact, the bidders have filed their claims with the Department of Commerce under the 1985 regulation. They have not renewed the claims under the 1991 regulation, creating further uncertainty as to whether they have exhausted their administrative remedy. Finally, in a case presently pending in the Claims Court, a disappointed bidder has sued the government for protest costs under § 3554(c) and the government has raised the constitutionality issue as a defense. *441 4th Street Ltd. Partnership v. United States,* No. 91–1692–C (Cl.Ct.; filed Dec. 16, 1991); *see also* 26 Cl.Ct. 1233 (1992) (granting Comptroller General leave to file amicus brief and denying motion to intervene).

Nevertheless, it is not clear that this Court is divested of jurisdiction by virtue of the fact that plaintiff could raise its constitutional argument as a defense to a claim brought against it in the Claims Court. In several cases the Supreme Court has approved district court entertainment

of declaratory judgment actions as stating claims directly under the Constitution, even where no separate injunction or damages are sought. *See, e.g., Powell v. McCormack*, 266 F.Supp. 354 (D.D.C.1967), *aff'd*, 395 F.2d 577 (D.C.Cir.1968), *aff'd in part and rev'd in part*, 395 U.S. 486, 517–18, 89 S.Ct. 1944, 1961–62, 23 L.Ed.2d 491 (1969); *Buckley v. Valeo*, 387 F.Supp. 135 (D.D.C. 1975), *remanded*, 519 F.2d 817 (D.C.Cir. 1975), *on remand*, 401 F.Supp. 1235 (D.D.C.1975), *aff'd*, 424 U.S. 1, 12, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 (1976). On the other hand, these cases may be distinguishable, because statutes creating federal jurisdiction over such constitutional claims vested original jurisdiction in the district courts. Moreover, in *Powell*, for example, declaratory relief was sought, virtually in lieu of an injunction, by the injured party. Unlike the instant case, *Powell* was not a preemptive suit in anticipation of an action which could have originated only in a forum other than a district court.

It is not necessary, however, to resolve this apparently pioneer issue of original jurisdiction, with its constitutional implications. The ultimate and decisive points are that the separation of powers question is not ripe for decision, and that, in any event, prudential considerations counsel decisively against declaratory relief in the circumstances here.

■ A constitutional challenge must present "a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Haworth*, 300 U.S. at 241, 57 S.Ct. at 464; *Buckley*, 424 U.S. at 12, 96 S.Ct. at 631. The doctrine of ripeness is founded on Article III limitations on judicial power as well as on separate prudential concerns. *Poe v. Ullman*, 367 U.S. 497, 502–03, 81 S.Ct. 1752, 1755, 6 L.Ed.2d 989 (1961); *Martin Tractor Co. v. Federal Election Comm'n*, 627 F.2d 375 (D.C.Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980). This Court has discretion under the prudential aspect of the ripeness doctrine to decline to address a consti-

tutional question when it is not properly presented, as when it involves uncertain and contingent future events. *Metzenbaum v. FERC*, 675 F.2d 1282, 1289–90 (D.C.Cir.1982). The doctrine of ripeness must be applied in light of the well-established principle that courts are to pass on the constitutionality of legislation "only in the last resort" and where there is no narrower ground for decision. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 345–48, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

■ Similar prudential considerations animate the well-settled discretion of federal courts to deny declaratory relief. *See Hewitt v. Helms*, 482 U.S. 755, 762, 107 S.Ct. 2672, 2677, 96 L.Ed.2d 654 (1987); *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962); *Moore v. United States House of Representatives*, 733 F.2d 946, 955 (D.C.Cir.1984) (en banc), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 775 (1985). First, the bidders have not pursued their remedies administratively or under the Tucker Act as aggressively as they might. For example, they have not renewed their claim with the agency since the 1991 regulation was promulgated. The plaintiff is therefore not imminently threatened with liability in this or any other forum. *See, e.g., Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163–64, 87 S.Ct. 1520, 1524–25, 18 L.Ed.2d 697 (1967); *Ashwander*, 297 U.S. at 347–48, 56 S.Ct. at 483–84. Moreover, the Executive Branch's action in amending the regulation in 1991 suggests that if the bidders pursued their claims administratively they might well be honored. In any event, the Executive agency has not officially acted on the defendants' claims. Under the 1991 regulation, the agency might decide to award the requested fees to the defendants as a matter of discretion. Such a prospect suggests that the present case does not clearly involve a "definite and concrete" dispute reaching the constitutionality of § 3554(c) (as construed by the DOJ). *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979); *see also Martin Trac-*

*tor Co.,* 627 F.2d at 385–87; *Ashwander,* 297 U.S. at 346–348, 56 S.Ct. at 482–83. Government agencies have a long history of generally following GAO recommendations, particularly where, as here, the recommendation echoes a clear congressional statement in the form of 31 U.S.C. § 3554(c). *See, e.g., Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1314 (D.C.Cir.1971).

Second, it is possible that the 1991 regulation would be upheld as a valid administrative implementation of § 3554(c). It is true that, at least facially, the 1991 regulation appears to conflict with § 3554(c) itself: the regulation provides that protest costs "may be paid" by the agency, while the statute uses the words "shall be paid." However, it is a time-honored principle that statutes are to be construed to avoid constitutional infirmity, based on the theory articulated in *Ashwander* that constitutional issues should not be reached where they can be avoided. *See, e.g., Edward J. De Bartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397–98, 99 L.Ed.2d 645 (1988); *United States v. Clark,* 445 U.S. 23, 33–34, 100 S.Ct. 895, 902–03, 63 L.Ed.2d 171 (1980); *Ashwander,* 297 U.S. at 348, 56 S.Ct. at 483. Indeed, authorities have declared that the word "shall" in a statute "may be held to be not mandatory where such a construction is necessary to uphold the constitutionality of the statute." *North Carolina Elec. Membership Corp. v. White,* 722 F.Supp. 1314, 1325 (D.S.C. 1989) (quoting 73 Am.Jur.2d *Statutes* § 25) (emphasis omitted); *see also United Hosp. Ctr., Inc. v. Richardson,* 757 F.2d 1445, 1453 (4th Cir.1985) (citing 1A C. Sands, *Sutherland Statutory Construction* § 25.-03, at 299 (4th ed. 1972)) ("Thus, in a proper case 'shall' may properly be construed as permissive."). In light of these principles, and the possibility that a court might give § 3554(c) a narrowing construction in a proper case, the drastic action of striking down an act of Congress may never be required.

Third, as noted above, a case raising the constitutionality of § 3554(c) is currently pending in the Claims Court. In that case, moreover, there appears to be a definite and concrete dispute between the parties because the government has actually been sued for the protest costs and has raised the constitutional issue as a defense.

Finally, Congress itself has been addressing the issue. Each House of Congress was actively—and so far as appears, favorably—considering legislation during the last session which would codify a version of the 1991 regulation. The Department of Justice on behalf of the United States has indicated to Congress that it supports this codification, suggesting that if passed the President would sign it.

Thus, it appears that the constitutional issue is susceptible to early resolution, either by action of the bidders and the agency under the 1991 regulation, or by codification of that regulation by Congress. In these circumstances it would be prudent to heed the Supreme Court's caution "against declaratory judgments on issues of public moment, even falling short of constitutionality, in speculative situations." *Rickover,* 369 U.S. at 112, 82 S.Ct. at 582; *see also Moore,* 733 F.2d at 955; *Wilderness Soc'y v. Morton,* 479 F.2d 842, 887 (D.C.Cir.), *cert. denied,* 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973); Levi, *Some Aspects of Separation of Powers,* 76 Colum.L.Rev. 371, 387 (1976).

Accordingly, an accompanying Order grants the defendants' motions to dismiss the action.